| | |
|---|---|
| JORAL SCHMALLE, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>PATRICIA PRUDHOMME, as Representative of ESTATE OF GUY PRUDHOMME, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 18-cv-02469 W (MDD)<br><br>**ORDER**<br>**(1) GRANTING DEFENDANT J6 DEVELOPMENT, LLC'S MOTION TO SET ASIDE DEFAULT [DOC. 6] AND**<br>**(2) QUASHING SUMMONS** |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Pending before the Court is Defendant J6 Development, LLC's motion to set aside default and dismiss the complaint for, among other reasons, insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Plaintiffs oppose.

The Court decides the matters on the papers submitted and without oral argument under Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Defendant's motion to set aside the default [Doc. 6], but **ORDERS** the summons quashed.

1

## I. BACKGROUND

On July 23, 2018, Plaintiffs Joral Schmalle, Loren Schmalle, Marla Schmalle, and JLM Funding, LLC filed this lawsuit in the San Diego Superior Court against Defendants Patricia Prudhomme, as the representative of the estate of Guy Prudhomme (the "Estate"), and J6 Developments, LLC ("J6"), among others. (*See Compl.*[1]) The lawsuit arises out of loans each of the four plaintiffs made individually to Columbia Property Capital, LLC ("CPC"). (*Compl.* ¶¶ 29, 30, 35–37.) The loans were secured by a Personal Guarantee signed by CPC's chief executive officer and owner, Guy Prudhomme. (*Id.* at Exs. 4–5, 7–9, 12; *Estate's Ans.* [Doc. 2] ¶ 22.)

Between February 2016 and May 2017, Guy requested and received several extensions on the loans as they became due. (*Compl.* ¶ 39.) However, on May 21, 2017, Guy was shot and killed by his neighbor over a property dispute. (*Id.* ¶ 42.) After Guy's death, Plaintiffs attempted to secure payment of the loans. (*Id.* ¶¶ 44–49.) When those efforts were unsuccessful, Plaintiffs filed this lawsuit asserting causes of action for breach of contract, account stated, and fraud and intentional deceit, and seeking to recover principle and interest, along with damages and attorneys' fees.

J6 is a limited liability company authorized to do business in the District of Columbia. (*Compl.* ¶ 9.) On July 27, 2018, Plaintiffs' Washington D.C. process server attempted to serve J6's agent for service of process, but the address listed with the Washington D.C. Secretary of State was incorrect. (*Webb Decl.* [Doc. 7-1] ¶ 3.) Four days later, Plaintiffs' process server personally served James Prudhomme with the summons and complaint at J6's primary office. (*Id.* ¶ 4, Ex. 1.) At the time, Mr. Prudhomme was identified on J6's website as its Purchasing Manager. (*Id.* ¶ 5, Ex. 2.)

//
//

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit 1.

2

J6 did not respond to the Complaint, and on September 25, 2018, Plaintiffs obtained Entry of Default against J6 in the San Diego Superior Court. (*Notice of Removal* Ex. B [Doc. 10-3].)

On October 26, 2018, Defendants Patricia Prudhomme and CPC removed the action to this Court based on diversity jurisdiction. (*Notice of Removal* ¶¶ 6–13.) Thereafter, this Court issued an order remanding the claims against CPC based on the parties' forum-selection clause. (*Remand Order* [Doc. 17] 10:15–19.) J6 now moves to set aside the default and to dismiss the case based on, among other things, insufficient service of process.

## II. LEGAL STANDARDS

A defendant may challenge service of process under Federal Rule of Civil Procedure 12(b)(5). When service is challenged, plaintiff bears the burden of establishing its validity. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir.2004). "Normally, a court will resolve any factual disputes raised by a Rule 12(b)(5) motion." Team Enterprises, LLC v. Western Investment Real Estate Trust, 2008 WL 4367560, * 1 (E.D.Cal. 2008) (citing Fed.R.Civ.P.12(i)). If it appears that effective service can be made and there has been no prejudice to the defendant, the court will quash service rather than dismiss the action. Id. (citing Umbenhauer v. Woog, 969 F.2d 25, 31 (3rd Cir.1992)). In determining the validity of service made before removal, the Court must apply the law of the state under which service was made. Whidbee v. Pierce County, 857 F.3d 1019, 1023 (9th Cir. 2017).

## III. DISCUSSION

J6 contends Plaintiffs' service of the summons and complaint was insufficient under California law. (*P&A* [Doc. 6] 10:15–23.) Plaintiffs respond that service was valid because Mr. Prudhomme was "apparently in charge" of J6's office or headquarters at the time of service. (*Opp'n* [Doc. 7] 4:3–5.)

3

Under California law, service on a corporation is accomplished by delivering a copy of the summons and complaint to "the person designated as agent for service of process" or "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager…." Cal.Code.Civ.P. § 416.10. A "general manager" under the California statute includes "any agent of the corporation of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." Gibble v. Car–Lene Research, Inc., 67 Cal. App. 4th 295 (1998) (quoting Eclipse Fuel Engineering Co. v. Superior Court, 148 Cal. App. 2d 736, 745–46 (1957)) (internal quotation marks omitted)

Service may also be accomplished by delivering the documents to someone with "ostensible authority" to accept service on behalf of defendant. CCP § 416.10(b); Pasadena Medi-Center Assoc. v. Superior Court, 9 Cal. 3d 773, 777 (1973) (finding service sufficient where the person served was held out by the defendant corporation to be the Secretary-Treasurer). "Ostensible authority arises when the defendant corporation causes or allows the plaintiff to believe the employee possessed the authority of a corporate officer." Pasadena Medi-Center, 9 Cal.3d at p. 780 (citing Cal.Civ.Code, § 2317).

Strict compliance with statutes governing service of process is not required under California law. Gibble, 67 Cal.App.4th at 313. "Rather, in deciding whether service was valid, the statutory provisions regarding service of process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant." Id. However, the fact that an employee of the corporation receives the summons does not establish substantial compliance because Code of Civil Procedure § 417.20 (a) requires evidence "establishing actual delivery to the person to be served." Shapiro v. Thrifty Payless, Inc., 2002 WL 31112533, *4 (2nd Dist. 2002) (citing Dill v. Berquist Construction Company, Inc., 24 Cal.App.4th 1426, 1438-1439 (1994)). "When the defendant is a corporation, the "person to be served" is one of the

4

individuals specified in section 416.10. [Citation omitted.] Thus, there is no substantial compliance where plaintiff fails to direct the summons toward a person who can be served on the corporation's behalf under section 416.10." Id. (citing Dill at 1439).

In Gibble, plaintiff served defendant Car-Lene Research, Inc., by delivering a copy of the summons and complaint with Jean Coddington, a manager at the company's Stonestown Galleria Shopping Center Officer. Id. 67 Cal.App.4th at 299. In evaluating whether service was sufficient under section 416.10, the court found the evidence established Coddington "had sole, unfettered authority to hire and fire employees, to authorize payment of their wages, to authorize or withhold payment to interview subjects, and to conduct Car-Lene's core business activities in the San Francisco area, apparently without oversight from any other manager or officer of the corporation." Id. at 313. Based on these uncontroverted facts, the court found that service was sufficient because plaintiffs "could reasonably conclude that Coddington was 'a general manager' for Car Lene" because the facts supported the inference that Coddington was of "sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." Id.

Here, Plaintiffs' contention that Mr. Prudhomme was the equivalent of a "general manager" is based on his position as J6's Purchasing Manager. (*Opp'n* 4:3–5.) In support of this contention, Plaintiffs attach a copy of his job description, which states: "James Prudhomme, a graduate of ODU, constantly sources the best products and vendors to incorporate in our projects and ensures timely delivery of all materials to the construction sites." (*Webb Decl.* Ex. 2.)

In contrast to the manager in Gibble, Mr. Prudhomme's job description does not indicate he is responsible for personnel decisions or that he is in any way responsible for overseeing J6's office. Rather, his responsibility for "sourcing" products and vendors, and ensuring delivery of materials to jobsites appears to involve working with outside vendors and jobsites. Nor is there any evidence suggesting whether he is subject to any oversight with respect to his listed responsibilities. In short, the evidence is insufficient

5

to support a finding that Mr. Prudhomme's position within J6 was of sufficient character and rank to make it reasonably certain that J6 would be apprised of the service.

Additionally, Plaintiffs have not provided this Court with any authority suggesting that an employee whose job responsibilities do not involve managing the corporation's office can be considered an office manager. And this Court's independent research has not located a case supporting such a finding. To the contrary, courts view managing agents and/or general managers as employees who have some substantial authority within a corporation. See Garabedian v. Griffin Steel & Supply Co., 340 F.2d 478, 479 (9th Cir. 1965) ("We believe managing agent implies some real authority of decision, something broader than just soliciting."); Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 624 (6th Cir. 2004) ("A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control."); Cooney v. Barry Sch. of Law, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014) ("[T]he phrase managing or general agent does not refer to any agent of the corporation, but one who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise.") (internal quotation marks omitted). Indeed, courts have even found service of a summons and complaint on a store or restaurant manager insufficient because they lack the type of substantial management authority found in Gibble. See e.g. Aussieker v. M&S Green-Power Energy, Inc., 2019 WL 2183783 (E.D. Cal. 2019) (finding service insufficient where documents were left with person identified as "Manager"); Shapiro v. Thrifty Payless Inc., (holding service on Rite Aid store manager was insufficient because was demonstrated that she was not in a position of such authority to hire or fire employees or to authorize payment of their wages without oversight, and not apparently in charge of the corporation's office or headquarters give she was one of over 500 "store managers"); Lacey v. Shoreline Foods, Inc., 2018 WL 4328107 *3 (2nd Dist. 2018) (finding service on restaurant manager insufficient).

6

Plaintiffs nevertheless insist that service was sufficient because, based on Mr. Prudhomme's position in the company and the fact that he is the son of J6's CEO, "it bends imagination to the breaking point for j6 to insinuate it" did not have notice of the service. (*Opp'n* 4:5–8.) But as J6 points out, a defendant's actual notice of the summons and complaint does not cure defective service. See Honda Motor Co. v. Superior Court, 10 Cal.App.4th 1043, 1048 (1992) (explaining that "California is a jurisdiction where the original service of process, which confers jurisdiction, must conform to statutory requirements or all that follows is void. [Citations omitted]"). For these reasons, the Court finds Plaintiffs' service of the summons and complaint on J6 was insufficient.

IV. **CONCLUSION & ORDER**

In light of the foregoing, J6's motion to set aside the default [Doc. 6] is **GRANTED**. However, there is no indication in the record that Plaintiffs cannot serve J6, nor is there any indication that J6 will suffer prejudice. Accordingly, the Court **QUASHES** service on Defendant J6 Development, LLC. See Team Enterprises, LLC, 2008 WL 4367560, *1 (E.D. Cal. 2008) ("If it appears that effective service can be made and there has been no prejudice to the defendant, the court will quash service rather than dismiss the action.") (citing Umbenhauer v. Woog, 969 F.2d 25, 31 (3rd Cir.1992)); Winn v. Lassen Canyon Nursery, Inc., 2011 WL 13239397, *1 (E.D. Cal. 2011) (same). Plaintiffs are **ORDERED** to serve Defendant J6 Development, LLC within 60 days from the date of this order if they wish to proceed with their claims against it.

**IT IS SO ORDERED.**

Dated: August 23, 2019

_____
Hon. Thomas J. Whelan
United States District Judge